## Walberg v. Rocolene Refining Company, Appellant.

Argued October 29, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Lawrence D. Blair,* with him *Moorhead & Knox,* for appellant.

*John B. Niklas, Jr.,* with him *E. B. Wolfe* and *Mc-Crady, McClure, Nicklas & Hirschfield,* for appellee.

OPINION BY MR. JUSTICE LINN, November 25, 1940:

This appeal is from the refusal of judgment n. o. v. in an action for personal injuries. Defendant maintained a gas station[1] at the corner of Penn Avenue and Center Street in the borough of Wilkinsburg.

On February 15, about noon, weather described by plaintiff as "sunshiny," plaintiff, intending to enter the building to buy cigarettes and to use the lavatory, walked on a concrete driveway to a point opposite the middle doorway where it became necessary for him to step up from the driveway to the concrete sidewalk.[2] Plaintiff had been at this gas station before. At the point where he stepped up, the sidewalk was about eight inches above the level of the driveway. He stepped from the driveway to the sidewalk "on some ice," then slipped and fell; as he was making the step he was "looking

---

[1] We have not been furnished with the Exhibits showing the place and put in evidence, though one of them, a photograph, was used at the oral argument. The following statement, quoted from appellant's history of the case, and not challenged by the appellee, describes it. "The station driveway, with two or three 'islands' equipped with gasoline pumps, occupied the Penn Avenue and Center Street frontages of the lot, and the building, consisting of an office and wash rooms, was located at the rear, on the southern line of the lot, facing out towards the pumps. Along the front of the building and extending from end to end was a concrete walkway three feet in width, the step of which varied from five to twelve inches in height above the sloping level of the driveway. The lower edge of the roof of the building was twelve and one-half feet above the driveway and extended out over the walkway the horizontal distance of fifty-one inches from the side wall of the building. There were three doors in front of the station building. The center door led to the station office and the other two doors, each six or seven feet distant therefrom on either side, led to the respective wash rooms."

[2] We take plaintiff's account of the occurrence and lay aside the evidence put in by defendant showing an accident at a different place and in different circumstances.

towards the door." Asked to describe the ice, he said "There were spots, they were practically a foot or so, and then a couple feet another patch; and it filled the length of this walk in front of the filling station." The sidewalk was about three feet wide and the tile roof of the building extended over part of the sidewalk. The area of the ice, where he says he fell, he "would judge [to be] about a foot." This area is very different from that alleged in his statement of claim in which he had averred that he fell on "ice and snow approximately ten or fifteen feet square," an area which could not have been found on the three-foot sidewalk; in his statement he also averred that defendant was negligent in allowing "ridges and irregular accumulations of ice" on the premises.

Plaintiff's duty was to look where he was going, to see what was plainly before him, to exercise that degree of care required by the circumstances. His own evidence shows that he failed to perform that duty. He had observed the difference in levels and was stepping up from one to another eight inches higher, but instead of looking where he was stepping, was looking ahead at the door he intended to enter. There were no obstructions in his way except the raised sidewalk which he saw and he made his mistake in the manner in which he took the step. He was apparently the only person about the place. In his evidence he attempted to attribute to the sunlight his omission to look; he said the sun was "coming down . . . in front of me." But the evidence will not support a finding of temporary blindness. He wore a cap with a "two to two and a half inch visor," tilted up "just a little" and held his hand up "to shield [his] eyes from the direct sun." He was looking ahead, as he testified, to the door; he was not exercising that degree of care required of one stepping up to a higher level in the circumstances described; if he had been, he would not have placed his foot on the ice. See *Lane v. Dickinson*, 276 Pa. 306, 309, 120 A. 264; *Davis v. Wilkes-*

*Barre,* 286 Pa. 488, 490, 134 A. 105; *Bilger v. Great A. & P. Tea Co.,* 316 Pa. 540, 543, 175 A. 496; *Ziegler v. Telegraph Co.,* 319 Pa. 274, 276, 179 A. 45; *Walker v. B. & W. Corp.,* 320 Pa. 504, 182 A. 643; *Walker v. Stern,* 132 Pa. Superior Ct. 343, 346, 200 A. 897.

The judgment is reversed and is here entered for the defendant.